# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
Assigned On Briefs April 11, 2014 Session

## HOWARD L. BOYD v. AMANDA MANDY WACHTLER, ET AL.

**Direct Appeal from the Circuit Court for Davidson County**
**No. 12-C-1398     Thomas W. Brothers, Judge**

**No. M2013-01545-COA-R3-CV - Filed June 26, 2014**

The jury found that Defendants were liable for damages arising from breach of contract and that Plaintiff was liable for damages arising from negligence. It also found that Defendants were entitled to treble damages under Tennessee Code Annotated § 62-2-503. Plaintiff appeals. Finding material evidence to support the jury verdict, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed and Remanded**

DAVID R. FARMER, J., delivered the opinion of the Court, in which HOLLY M. KIRBY, J., and J. STEVEN STAFFORD, J., joined.

Howard L. Boyd, *Pro Se*

Paul M. Buchanan, Nashville, Tennessee, for the appellees, Amanda Mandy Wachtler and Gracie Wachtler.

## MEMORANDUM OPINION[1]

This dispute arises from a 2011 oral agreement between Plaintiff Howard L. Boyd (Mr. Boyd) and Defendants Amanda "Mandy" M. Wachtler (Mrs. Wachtler) and Gracie

---

[1]Rule 10 of the Rules of the Court of Appeals of Tennessee provides:

This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION", shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

Wachtler (Ms. Wachtler; collectively, "the Wachtlers") whereby Mr. Boyd agreed to perform renovations to real property owned by Ms. Wachtler. In August 2011, Ms. Wachtler purchased a home in Nashville. Her mother, Mrs. Wachtler, was the real estate agent who facilitated the purchase. Mrs. Wachtler contacted Mr. Boyd about performing and overseeing renovations and various repairs to the home, which ultimately was to include painting and carpentry, plumbing, kitchen remodeling, electrical work, ceiling repair, refinishing floors, tiling and carpet removal. The parties' oral agreement did not include a final cost estimate or agreed price. On October 21, 2011, Ms. Wachtler advised Mr. Boyd by email that his services were "no longer needed." On October 24, Ms. Wachtler again emailed Mr. Boyd and stated that he "may have through November 6 to complete the job" and asked him to resume work the following day. Mr. Boyd advised Ms. Wachtler by return email that, "because [she] terminated [his] services, he [had] already began work on another job" and that she would therefore "have to wait until [he was] finished with [the other] client" before work could be resumed. He also advised Ms. Wachtler that he had not been paid. The record contains an invoice from Mr. Boyd to the Wachtlers in the amount of $5,000 and indicates a prior payment in the amount of $2,009.57. Ms. Wachtler did not tender payment, Mr. Boyd did not resume work, and Ms. Wachtler hired J. Myers Construction Services to complete the renovations and repairs.

In January 2012, Mr. Boyd filed a civil warrant in the Nashville Metropolitan General Sessions Court alleging the Wachtlers were liable for breach of contract and the failure to pay for services. Ms. Wachtler counter-claimed for breach of contract, negligence, misrepresentation, negligent misrepresentation, and an award of treble damages under Tennessee Code Annotated § 62-6-503(e). The general sessions court dismissed both claims and Mr. Boyd filed a notice of appeal to the Circuit Court for Davidson County. In July 2012, Mr. Boyd filed his first amended complaint and asserted claims of breach of contract and failure to pay for services rendered. In December 2012, Mr. Boyd again amended his complaint to assert a claim for unjust enrichment. In December 2013, Ms. Wachtler amended her complaint to allege that Mr. Boyd had fraudulently invoiced for work that he did not perform.

The matter ultimately was submitted to the jury on the parties' cross-claims for breach of contract and Ms. Wachtler's claims of misrepresentation, negligence, and treble damages pursuant to Tennessee Code Annotated 62-6-503(e).[2] Following a trial on March 18-19, 2013, the jury found the Wachtlers liable for breach of contract and found that Mr. Boyd was not guilty of breach of contract. The jury also found that Mr. Boyd was not guilty of misrepresentation but that he was liable for negligence. The jury awarded Mr. Boyd damages

_____

[2]The trial court granted the Wachtlers' motion to dismiss Mr. Boyd's claim for unjust enrichment, made at the close of Mr. Boyd's proof. (TR at 243)

in the amount of $4,989.57. The jury determined Ms. Wachtler was entitled to damages in the amount of $2,388 with respect to her claim of negligence, and that she was entitled to treble damages under section 62-6-503(e). The jury accordingly awarded Ms. Wachtler damages in the amount of $7,164. The trial court entered judgment on the jury verdict on March 26, 2013. The trial court approved the award of treble damages and determined that the damages awarded to Mr. Boyd should be subtracted as a set-off against the damages awarded to Ms. Wachtler, resulting in an award of damages to Ms. Wachtler in the amount of $2,174.43. Mr. Boyd filed a motion to amend the judgment or for a new trial, which the trial court denied by order entered May 31, 2013. Mr. Boyd filed a timely notice of appeal to this Court.

### Issues Presented

Mr. Boyd presents the following issues for our review, as stated by him:

(1)     Whether there is material evidence in the record to support the jury's finding that the oral agreement between [Mr.] Boyd and [Ms.] Wachtler was for $3,000 or more.

(2)     Whether [Ms.] Wachtler asserted a cognizable claim for negligence where there was a contract between the parties and no allegation of property damage.

(3)     Whether the jury verdict is contradictory and irreconcilable.

(4)     [Whether] [Ms.] Wachtler and/or Jody Myers issued false testimony while under oath.

### Standard of Review

On appeal from a jury trial, we will not set aside the jury's findings of fact unless there is no material evidence to support the verdict. *Goodale v. Langenberg*, 243 S.W.3d 575, 583 (Tenn. Ct. App. 2007); Tenn. R. App. P. 13(d). Upon review, this Court will not re-weigh the evidence, but will take the strongest view possible of the evidence in favor of the prevailing party, and discard evidence to the contrary. *Id.* We will allow all reasonable inferences to uphold the jury's verdict, setting it aside only if there is no material evidence to support it. *Id.* Our review of the trial court's conclusions of law in a jury trial, however, is *de novo* upon the record, with no presumption of correctness. Tenn. R. App. P. 13(d); *Campbell v. Florida Steel Corp.*, 919 S.W.2d 26, 28 (Tenn. 1996).

***Discussion***

We begin our discussion of the issues presented for review by noting that Mr. Boyd has proceeded *pro se* throughout this matter and that, although the Wachtlers have been represented by counsel, the matter proceeded relatively informally with respect to the pleadings and motions filed in the trial court. The Wachtlers did not incorporate the allegations made in their general sessions complaint into the amended complaint they filed in the circuit court, for example, but merely alleged fraud in their amended complaint and did so without specificity.[3] Similarly, the argument section of the Wachtlers' brief to this Court consists of approximately one and one-half pages wherein the Wachtlers generally assert that Mr. Boyd's arguments are without merit and are "absurd." With this background and the standard of review applicable to a trial by jury in mind, we turn to the issues presented for our review.

We turn first to Mr. Boyd's assertion that the record does not contain material evidence to support a finding that the parties' contract was for an amount exceeding $3,000. Mr. Boyd's argument with respect to this issue is that, in order to assess treble damages pursuant to Tennessee Code Annotated § 62-6-503(e), "the[ j]ury necessarily determined that [he] had improperly engaged in the home improvement business without a license." Mr. Boyd's argument, as we understand it, is that because section 62-6-501(4)(B) provides that "home improvement" does not include any home improvement for which the contract price is $3,000 or less, the jury necessarily and erroneously found that the contract price between the parties was for an amount in excess of $3,000. Mr. Boyd relies on *Helton v. Angelopoulos*, 629 S.W.2d 15 (Tenn. 1982), for the proposition that, "when determining whether a contract price exceeds a statutory limit" the courts "examine what the contract price was believed to be at the commencement of the contract" rather "at what the contract was ultimately paid."

The question presented in *Helton* was whether a licensed general contractor was precluded from recovering amounts due on a building contract when the costs of construction exceeded the $250,000 limit, plus the ten percent permitted tolerance, of the contractor's license. *Helton v. Angelopoulos*, 629 S.W.2d 15, 16 (Tenn. 1982). The parties' contract in that case was a standard cost-plus-fee agreement and did not specify a maximum cost. *Id.* The project was undertaken on a "fast track" method and the property owners made a number of changes and additions and separately contracted for various services. The *Helton* court noted that, "under [the] circumstances it would have been extremely difficult for any contractor to keep an accurate account of what the costs of the project were." *Id.* at 17. The

---

[3]The Wachtlers' claims clearly were tried by consent as provided by Tennessee Rule of Civil Procedure 15.02.

final cost in that case exceeded $288,000. The supreme court held that the contractor was entitled to recover notwithstanding that the final cost exceeded the limits of his license. *Id.* at 18.

In *Helton*, however, it was undisputed that the contractor was licensed, that the architects had provided a preliminary cost estimate in the amount of $185,000, and that the contractor had submitted a bid in the amount of $213,000, which included his fee. *Id.* at 16. The *Helton* court emphasized that "there [was] no indication that the contractor . . . was guilty of negligence in submitting his bid" notwithstanding that the bid was cost-plus and did not specify a ceiling amount. *Id.* at 19. It further noted that the outcome would be different if a contractor "fraudulently, or in bad faith, or through collusion with an architect or engineer, submitted a bid upon a project obviously beyond the monetary limit of his license[.]" *Id.*

*Helton* does not stand for the proposition that a contractor may avoid the statutory licensing scheme merely by entering into an agreement, oral or written, for an undetermined amount regardless of the scope of the project. Rather, there is an element of good faith in the analysis. The question in this case is whether material evidence supports the jury's implicit finding that the parties realistically and in good faith anticipated that the project would exceed $3,000. In light of the evidence in the record, including Mr. Boyd's invoice for only a portion of the complete project, we find material evidence to support the jury's finding.

We turn next to Mr. Boyd's assertion that Ms. Wachtler failed to assert a cognizable claim for negligence. Mr. Boyd's argument with respect to this issue is that Ms. Wachtler failed to demonstrate that Mr. Boyd breached any duty other than those imposed by his contractual obligation to perform work in a workman like manner, free of any defects. Mr. Boyd's argument, as we understand it, is that Ms. Wachtler failed to state a claim for negligence as a matter of law and that the claim should not have been submitted to the jury.

Upon review of the record, we observe that the jury charge in this case included instructions on the parties' cross-claims for breach of contract and Ms. Wachtler's claims of negligence. Mr. Boyd did not move the trial court to dismiss Ms. Wachtler's claim of negligence for failure to state a claim, nor did he assert that the claim was barred as a matter of law. Mr. Boyd did not object to the jury charges. Mr. Boyd does not refer us to anything in the record to demonstrate that this issue was raised in the trial court. Issues not raised or asserted in the trial court may not be raised for the first time on appeal.[4] *Barnes v. Barnes*,

---

[4]We observe that Mr. Boyd asserted in his motion to alter or amend the judgment or for a new trial
(continued...)

193 S.W.3d 495, 501 (Tenn. 2006). Mr. Boyd did not raise the issue of failure to state a claim in the trial court and may not raise it for the first time on appeal.

We next turn to Mr. Boyd's assertion that the jury verdict finding him not liable for breach of contract but liable for negligence is contradictory and irreconcilable. In his brief, Mr. Boyd assets that the Wachtlers' breach of contract claims were predicated on their assertion that he failed to complete the work and that some of the work was not performed in a workman like manner. He asserts that, because the jury found that he did not breach the contract, its finding that he negligently performed the work is contradictory and should be reversed.

It is well-settled that inconsistent and irreconcilable verdicts cannot stand. *Concrete Spaces v. Sender*, 2 S.W.3d 901, 911 (Tenn.1999) (citations omitted). "Where a judgment is based upon inconsistent findings by a jury it is the duty of the appellate court to reverse and remand the case for a new trial." *Id.* (citations omitted). We have a countervailing duty, however, to "whenever possible, give effect to a jury's verdict[,]" and "[c]ases involving inconsistent jury verdicts are no exception[.]" *Rutherford v. Southern College of Optometry*, No. W2008-02268-COA-R3-CV, 2009 WL 5064972, at *8 (Tenn. Ct. App. Dec. 28, 2009). As we noted in *Rutherford*:

> It is the duty of the court in construing verdicts to give them the most favorable interpretation and to give effect to the intention of the jurors if that intention be permissible under the law and ascertainable from the phraseology of the verdict. If after an examination of the terms of the verdict the court is able to place a construction thereon that will uphold it, it is encumbent [sic] upon the court to do so.

*Id.* at *9 (quoting *Templeton v. Quarles*, 52 Tenn. App. 419, 374 S.W.2d 654, 660 (Tenn. Ct. App.1963) (citations omitted); *see also Tip's Package Store, Inc. v. Commercial Ins. Managers*, Inc., 86 S.W.3d 543, 560 (Tenn. Ct. App. 2001) (holding that the lower court "properly reconciled any apparent inconsistencies" in a jury's verdict)). Breach of contract and negligence, moreover, are distinct causes of action. *E.g., Acuff Intern., Inc. v. Sanya Mfg. Corp.*, No. W2013–01146–COA–R3–CV, 2014 WL 346661, at *3 (Tenn. Ct. App. Jan. 30, 2014). As we recently noted,

---

[4](...continued)
that Ms. Wachtler's claim of negligence should be "amended and denied" where Mr. Boyd was not provided an opportunity to cure any alleged defects. This argument, as we perceive it, is properly applicable to Ms. Wachtler's contract claims. Additionally, an issue may not be first asserted in a motion to alter or amend. *In re M.L.D.*, 182 S.W.3d 890, 895 (Tenn. Ct. App. 2005).

To maintain an action for breach of contract, a plaintiff must establish (1) the existence of an enforceable contract, (2) non-performance of the contract amounting to a breach of that contract, and (3) damages flowing from the defendant's nonperformance. *Ingram v. Cendant Mobility Fin. Corp.*, 215 S.W.3d 367, 374 (Tenn. Ct. App. 2006). In order to make out a claim for negligence, the plaintiff must likewise show:

> (1) duty of care owed by the defendant to the plaintiff; (2) conduct falling below the applicable standard of care amounting to a breach of that duty; (3) an injury or loss; (4) causation in fact; (5) proximate, or legal cause.

*Satterfeild v. Breeding Insulation Co.*, 266 S.W.3d 347, 355 (Tenn. 2008).

*Id.*

As observed above, the pleadings in this case were somewhat informal, at best. The jury verdict form did not provide for specific factual findings. However, the questions put to the jury in this case, as we perceive them after review of the record, were whether Ms. Wachtler breached the contract by failing to pay Mr. Boyd amounts due for work performed; whether Mr. Boyd breached the contract by failing to complete the project; and whether Mr. Boyd performed some of the work in a manner falling below the standard of care, thereby resulting in damages to Ms. Wachtler.

Questions of breach of duty, cause in fact, and legal causation are questions of fact for the jury and not questions to by determined by the trial court "unless the uncontroverted facts and inferences to be drawn from them make it so clear that all reasonable persons must agree on the proper outcome." *Haynes v. Hamilton Cnty.*, 883 S.W.2d 606, 612 (Tenn. 1994). Upon review of the record, particularly Mr. Myers testimony, we find the record contains material evidence to support the jury's finding of negligence in this case.

We turn finally to Mr. Boyd's assertion that Mr. Myers and Ms. Wachtler gave false testimony. In his brief, Mr. Boyd asserts that Mr. Myers and Ms. Wachtler gave false testimony with respect to a sewage leak and Ms. Wachtler's water bill. The credibility of witnesses is a matter to be determined by the finder of fact, and we will give due deference to the jury's determinations and the trial court's prerogative as thirteenth juror. *Johnson v. Nunis*, 383 S.W.3d 122, 134 (Tenn. Ct. App. 2012). Moreover, as noted above, the jury form in this case did not provide for particularized findings of fact, and we cannot ascertain the extent to which the jury made findings with respect to either the sewage leak or Ms. Wachtler's water bill. To the extent to which they were among the damages alleged by Ms.

Wachtler, we must defer to the jury's credibility determinations.

## *Holding*

In light of the foregoing, we affirm the jury verdict in this case. Costs on appeal are taxed to the appellant, Howard L. Boyd. This matter is remanded to the trial court for enforcement of the judgment and the collection of costs.

_____
DAVID R. FARMER, JUDGE